552 So.2d 820 (1989)
H.W. "Sonny" JONES
v.
CITY OF MERIDIAN, Mississippi.
No. 07-KA-58534.
Supreme Court of Mississippi.
August 30, 1989.
Rehearing Denied October 4, 1989.
*821 Leslie Calvin Gates, Meridian, for appellant.
Robert James Bresnahan, Meridian, Wayne M. Snuggs, Asst. Atty. Gen., Mike C. Moore, Atty. Gen., Jackson, for appellee.
Before DAN M. LEE, P.J., and ROBERTSON and PRATHER, JJ.
PRATHER, Justice, for the Court:

I.
The primary issue in this appeal concerns the constitutionality of a Mississippi "breach of the peace" statute  i.e., whether the statute is unconstitutional on its face, both for overbreadth and vagueness, as well as in application. H.W. "Sonny" Jones, Jr. [hereinafter Jones], was convicted in the Meridian Municipal Court for "creat[ing] a disturbance, or a breach of the peace," in a "public place of business." Miss. Code Ann. § 97-35-13 (1972). Jones was fined $50.00 and assessed court costs; the fine was suspended. Jones appealed the decision to the Lauderdale County Court, for a trial de novo before a jury. Jones was convicted, fined $250.00, and assessed court costs. Jones appealed the decision to the Lauderdale Circuit Court which affirmed the county court decision. Jones now perfects his appeal to this Court raising constitutional questions.

A.
Jones presents the following statement of issues:
(1) Mississippi Code Annotated § 97-35-13 [hereinafter Statute], which Jones was found guilty of violating:
(a) is unconstitutionally overbroad in violation of the First Amendment of the United States Constitution;
(b) is unconstitutionally vague and, therefore, violates the due process clause of the Fourteenth Amendment of the United States Constitution; and
(c) was unconstitutionally applied.
(2) The jury was not properly nor adequately instructed.
(3) The Special County Court Judge erred in enhancing the punishment imposed by the Municipal Court Judge.

B.
The evidence presented by the City of Meridian derives primarily from the testimony of four eyewitnesses: Meridian Police Officer Covert, Lauderdale County Juvenile Center Director Roy Dabbs, Youth Services Counselor Cindy Edwards, and part-time Juvenile Center employee Gloris Cooper. On November 12, 1985, Meridian Police Officer, Larry Covert, went to the Lauderdale County Juvenile Center [hereinafter *822 Center] to serve a warrant on Willie J. Dobbins. Covert located Dobbins inside the Center's lobby, after which the two stepped outdoors to discuss the matter. Dobbins explained to Covert he was at the Center because he was needed as a witness at his sister's shelter hearing in Juvenile Court.
Two or three minutes into the discussion, Covert was approached by H.W. "Sonny" Jones, an attorney. In a "very intimidating manner," Jones "grabbed" the warrant from Covert's possession and simultaneously asked: "What have you got a warrant on him for?" As Covert replied, Jones read the warrant. In a "loud" and "demanding" tone, Jones informed Covert that he "was not going to arrest his `client'  that he (Jones) needed Dobbins to testify for another client (Dobbins' sister)." Jones then left to make a photocopy of the warrant.
Meanwhile, Covert and Dobbins returned to the Center's lobby. A short time later, Jones returned and loudly reiterated to Covert that he was not going to arrest Dobbins and, besides, Covert was "out of [his] jurisdiction." Jones was "very irate" and "began pacing back and forth in front of [Covert]." On several occasions, Jones "got up into [Covert's] face [within] five to six inches." When Jones was not pointing his finger at Covert's face, Jones was "throwing his arms around in a wild manner." On one occasion, Jones slammed a book onto a nearby table.
Several times during the exchange, Covert requested that Jones "quiet and calm down and we could settle this matter"; Covert "attempted to explain to [Jones] that he was in no rush" and was "willing to wait" until after Dobbins testified for his sister. Jones apparently did not hear Covert's explanation and just kept repeating himself, saying that "he didn't have to do anything Covert told him; that [Covert] was not serving a warrant on ... Dobbins; that if [he] did, he would subpoena ... Dobbins from the City Police Station to come back to court." At one point during the exchange, Jones commented in a "loud and boisterous" tone: "[Y]ou police officers think you can come out here and just do what you want and tell anybody what you want and I am not gonna stand here and let you tell me what to do."
Finally, Covert ordered Jones to "quiet or settle down or [he] would have to arrest him for disorderly conduct and that he had already interfered with ... [his duty] to serve a warrant." Jones, however, said he would not quiet down. Instead, Jones turned and "headed toward the police car" as he dared Covert to "take me, take me to jail, come on take me, take me  we'll see what happens to you [Covert]."
Witnesses described Jones during this "ten to fifteen minute" period as "out of control" and as "someone who wanted to be arrested"; his behavior was "shocking" and it "interfered" with business at the "Center." Covert's disposition was the converse; he was "even-tempered" and "maintained his cool."
Jones concedes that the conversation between Covert and him was "heated" and that, at one point, he "turned toward the door to walk to the patrol car and acknowledged that he was ready to be arrested." But Jones claims that Covert had an "attitude" problem and was not responsive to his questions about the warrant. Jones feels he spoke to Covert in a "conciliatory manner" and did not intend to "prod him." Jones testified:
[I]t bothered me that he had approached me in such a threatening intimidating manner, getting right up in my face, almost nose to nose, I mean, and I stepped back away from him at that time and  and said, now, I  I don't know why you're trying to physically intimidate me, but that's not gonna work. I have a right to be here and I'm not gonna be physically intimidated. He stepped back up to me and then again in that same under his breath strained manner advised me that I was not anyone special, that he would throw my ass in jail just like anyone else and that if I didn't shut up and go on, he would throw me in jail for disturbing the peace.
Jones further testified:
I have a right to speak and as an attorney who offers himself to the public to *823 represent people and protect their rights and stand up for their rights. I felt like I had a duty to stand up for my rights, and I was not going to at that time let a police officer with no reason, no good cause, to order me to shut up, to attempt to physically intimidate me and attempt to silence me for no reason... . [H]e wanted me to be quiet and don't say anything else and ... I was concerned about the situation as it existed[.] I was determine (sic) to establish that before my client and before that audience or anyone that was watching, he was not going to just say, shut up or I'm gonna arrest you, and shut me up and  and be  be abused by a police officer.
Dobbins, Jones' only other witness, remembered little of the conversation between his attorney and Covert. Dobbins recalled that "both of 'em was arguing[;] neither one of 'em [was] arguing louder than the other'n or nothing."
Jones was arrested and subsequently convicted for violation of Miss. Code Ann. § 97-35-13 (1972), entitled "Disturbance in public place":
Any person who shall enter any public place of business of any kind whatsoever, or upon the premises of such public place of business, or any other public place whatsoever, in the State of Mississippi, and while therein or thereon shall create a disturbance, or a breach of the peace, in any way whatsoever, including, but not restricted to, loud and offensive talk, the making of threats or attempting to intimidate, or any other conduct which causes a disturbance or a breach of the peace or threatened breach of the peace, shall be guilty of a misdemeanor, and upon conviction thereof shall be fined not more than five hundred dollars ($500.00) or imprisoned in jail not more than six (6) months, or both such fine and imprisonment.

II.
The following constitutionally-related issues will be addressed in this section: overbreadth, vagueness, and application.

A.
Jones posits that the Statute is allegedly overbroad because it "regulat[es] and proscrib[es] ... constitutionally-protected First Amendment [r]ights, including the right to make an extemporaneous, on-the-scene protest to a policeman's demeanor, conduct and authority." In addition, Jones contends that the Statute is "not tied to an expressed interest of the state nor is its application limited to the extent necessary to serve such an interest." Case law which may narrow the Statute's breadth is nonexistent. Therefore, the potential for unconstitutional application is substantial.
Under the "overbreadth doctrine," a statute may be invalidated if it is fairly capable of being utilized to regulate, burden, or punish constitutionally-protected speech or conduct. Thornhill v. Alabama, 310 U.S. 88, 97, 60 S.Ct. 736, 741-42, 84 L.Ed. 1093, 1099-1100 (1940). The United States Supreme Court has provided further guidance:
Particularly where conduct and not mere speech is involved, the facial overbreadth of a statute must be both real and substantial, judged in relation to the statute's plainly legitimate sweep, to justify holding it to be void on its face as violative of the First Amendment's freedom of expression.
Broadrick v. Oklahoma, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973) (emphasis added).
The majority in Broadrick opined that "ordinary criminal laws," which might be used to curtail constitutionally-protected speech or conduct, presented particularly strong reasons for not applying the overbreadth doctrine. Notably, the majority singled out "breach of peace" statutes as an example of this premise; prosecutions under these statutes should generally be decided on whether the defendant's own conduct could constitutionally be restricted  not on whether other speech or conduct could fall within statutory language. "[W]hatever overbreadth may exist should be cured through case-by-case analysis of the fact situations to which its sanctions, assertedly, may not be applied." Broadrick, *824 413 U.S. at 615-16, 93 S.Ct. at 2918, 37 L.Ed.2d at 842.
Admittedly, the Statute being challenged by Jones may have been constructed with broad language; the Statute may arguably be construed in a manner which would reach constitutionally protected speech or conduct. Cf. McLaurin v. Greenville, 187 So.2d 854, 859 (Miss. 1966) (citations omitted). These admissions notwithstanding, long-standing case law unequivocally holds that this or any other statute may not be construed "so as to infringe upon the state or federally-protected constitutional rights" of Jones or any other individual.[1]
Indeed, the county court judge in Jones' case limited the Statute's construction through the following jury instructions  C-4, C-5, and D-11, respectively:
Under the constitution of the United States and the laws of the State of Mississippi, a person has the right to speak freely, and if you believe from the evidence in this case that Mr. Jones' language and conduct at the Lauderdale County Juvenile Center on November 12, 1985, for which he was arrested, were only an exercise of his constitutionally-protected right of free speech, then your verdict should be not guilty.
Before you can return a verdict of guilty in this case, you must find that Mr. Jones was not exercising his right to speak freely. In other words, before you can find that Mr. Jones created a disturbance or breach of the peace, you must believe beyond a reasonable doubt from the evidence that Mr. Jones' conduct or language exceeded the bounds of argument and persuasion and was calculated to or could have led to a breach of the peace.
The Court instructs the jury that if you believe [Mr. Jones] was exercising his constitutional right of free speech, then he is entitled to an acquittal regardless of whether his speech invited dispute, brought about a condition of unrest or stirred people to anger.
See also Boos v. Barry, 485 U.S. 312, 108 S.Ct. 1157, 99 L.Ed.2d 333 (1988) (congregation clause held not to be facially violative of First Amendment  notwithstanding that the provision's language applies to any congregation for any reason and places no restrictions on police discretion; such constitutional quagmire concerning "overbreadth" is "alleviated" by a court's narrowing construction).

B.
The Statute's vagueness, according to Jones, is evidenced by Covert's unbridled exercise of discretion in the determination that Jones' "conduct was loud, offensive, intimidating and in breach of the peace." The Statute's vagueness results in "subjective, ad-hoc" decision making by the enforcing official or fact-finder concerning what conduct is unlawful. Individuals including Jones "are not given fair advance warning that a contemplated course of conduct is against the law."
The doctrine of "vagueness" is confusingly similar to  yet very distinct from  that of overbreadth. A statute should be held void on its face if the speech or conduct being prosecuted is so unclearly defined that individuals "of common intelligence must necessarily guess at the meaning and differ as to its application." Connally v. General Constr. Co., 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926) (emphasis added). An unconstitutionally vague statute is violative of the due process clause of the Fourteenth Amendment. Harris v. Mississippi Real Estate Commission, 500 So.2d 958, 964 (Miss. 1986); Meeks v. Tallahatchie County Democratic Executive Committee, 513 So.2d 563, 565 (Miss. 1987).
Jones' claim that the Statute failed to provide him adequate warning regarding what conduct is proscribed is unfounded. See Grayned v. City of Rockford, 408 U.S. *825 104, 108, 92 S.Ct. 2294, 2298-99, 33 L.Ed.2d 222, 227-28 (1972). As posited by Jones, some terminology in the Statute  e.g., "loud," "offensive," "intimidating," and "breach of the peace"  is unduly and unconstitutionally "abstract and imprecise." The Statute is not so vague or overbroad that individuals  particularly attorneys  of "a common intelligence must necessarily guess at its meaning." Broadrick, 413 U.S. at 607, 93 S.Ct. at 2913, 37 L.Ed.2d at 837 (citations omitted). The United States Supreme Court opined in this regard:
Words inevitably contain germs of uncertainty and . .. there may be disputes over the meaning of such terms. [But] there are limitations in the English language with respect to being both specific and manageably brief, and it seems to us that although the prohibitions may not satisfy those intent on finding fault at any cost, they are set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with, without sacrifice to the public interest.
Broadrick, 413 U.S. at 608, 93 S.Ct. at 2913-14, 37 L.Ed.2d at 837 (quoting United States Civil Serv. Comm'n v. National Ass'n of Letter Carriers, 413 U.S. 548, 578-79, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973)); see also Boos, 485 U.S. at 312, 108 S.Ct. at 1158, 99 L.Ed.2d at 333 (congregation clause held not to be facially violative of the federal constitution for "vagueness"  notwithstanding that the courts have yet to define or limit the word "peace").

C.
Imprecision aside, uncertainty of the meaning is irrelevant; Jones' conduct at the Center clearly falls within the ambit of the Statute's proscription. See Broadrick, 413 U.S. at 608, 93 S.Ct. at 2914, 37 L.Ed.2d at 838 (citations omitted). That is, Jones' disorderly conduct in a public place of business should be characterized as that which the State has  or should have  a compelling interest in proscribing.
The Statute is constitutional  facially and as applied.

III.
The remaining issues presented for review are nonconstitutionally-related and should be dismissed on procedural grounds. "[T]he right of appeal does not exist unless expressly given by statute and is not to be extended to cases not within the statute." State v. Warren, 197 Miss. 13, 16, 19 So.2d 491 (1944) (case involving breach of peace). Pursuant to statutory law:
[T]here shall be no appeal from the circuit court to the supreme court of any case civil or criminal which originated in a justice of the peace, municipal or police court and was thence appealed to the county court thence to the circuit court unless in the determination of the case a constitutional question be necessarily involved... .
Miss. Code Ann. § 11-51-81 (1972 & Supp. 1988).
Case law is unequivocally supportive. See, e.g., Barrett v. State, 491 So.2d 833 (Miss. 1986); Alt v. City of Biloxi, 397 So.2d 897 (Miss. 1981); Gaughf v. City of Jackson, 137 So.2d 190 (Miss. 1962); Warren, 197 Miss. at 13, 19 So.2d at 491; Wells v. State, 201 Miss. 249, 29 So.2d 119 (1947); Keeton v. State, 197 Miss. 11, 19 So.2d 477 (1944).
In cases in which both constitutional and unconstitutional issues are involved, only the constitutional issues should be reviewed by this Court. Gaughf, 137 So.2d at 190.
Notwithstanding that Jones' nonconstitutional issues should be barred from review on procedural grounds, a substantive analysis revealed that each argument set forth by Jones is devoid of merit. With one exception, a published discussion of these issues is unwarranted.

IV.
Jones claims that the Special County Court Judge erred by enhancing the punishment imposed by the Municipal Court Judge; that is, the enhancement of his sentence "represents punishment for exercising his right to appeal, and that such an enhancement is designed to and has the effect of discouraging appeals."
*826 In Smith v. State, 463 So.2d 1033 (Miss. 1984), this Court rejected a similar argument. The defendant in Smith was convicted of simple assault in a county court and was sentenced to pay a fine of $269.50 and serve 90 days in jail  suspended for a one-year period. In the subsequent trial de novo, the circuit court convicted the defendant and sentenced him to pay a $350.00 fine and serve six months in jail  5 1/2 of which were suspended. The defendant appealed the circuit court's imposition of a harsher sentence. Relying on Colten v. Kentucky, 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972), this Court affirmed the circuit court decision.
In Colten, the defendant was convicted and fined $50.00 in a trial de novo for disorderly conduct after being convicted and fined $10.00 in a lower court for the same charge. The defendant appealed his case to the United States Supreme Court and claimed that the sentence enhancement was violative of the Constitution's Due Process Clause. The Supreme Court disagreed and ruled that no "absolute" constitutional bar to sentence enhancement at a second trial exists  particularly in cases which arise under a two-tier judicial system like that employed by Kentucky (and Mississippi).[2] The Court rationalized that a trial de novo represents a "completely fresh determination of guilt or innocence" by a court that was not being "asked to do over what it thought it had already done before correctly." In addition, if a sentence is enhanced in a trial de novo, "it no more follows that such a sentence is a vindictive penalty ... than that the inferior imposed a lenient penalty." Id. at 117, 92 S.Ct. at 1960-61, 32 L.Ed.2d at 594. Therefore, in cases such as Colten, the defendant has the burden of proving actual judicial vindictiveness without the aid of a presumption. Id. at 116, 92 S.Ct. at 1960, 32 L.Ed.2d at 593-94, cited in Alabama v. Smith, ___ U.S. ___, ___, 109 S.Ct. 2201, 2205, 104 L.Ed.2d 865 (1989).
Finally, Smith should be read in conjunction with Anderson v. State, 381 So.2d 1019 (Miss. 1980), in which this Court held that one may not challenge an enhancement as cruel and inhuman nor as discretionary abuse  so long as the sentence is within statutory limitations. Jones' sentence is well within Mississippi's statutory limitation.
In Mississippi, breach of the peace is punishable by a fine of $500.00 or imprisonment for up to six months, or both. The municipal court in the case sub judice fined Jones $50.00; the county court imposed a $250.00 fine. Pursuant to Anderson, the enhanced fine falls within Mississippi's sentencing guideline; in addition, Jones provides no evidence which leads to the conclusion that the enhancement is reflective of judicial vindictiveness. Therefore, the enhancement of Jones' sentence from $50.00 to $250.00 was proper.
Based on the foregoing, the circuit court decision is affirmed.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and ROBERTSON, SULLIVAN, ANDERSON and BLASS, JJ., concur.
PITTMAN, J., not participating.
NOTES
[1] See, e.g., McLaurin v. Greenville, 187 So.2d 854, 859 (Miss. 1966) (citations omitted).

Under the doctrine of pari materia, the Statute could be considered limited by the Mississippi Supreme Court's restriction imposed on a companion statute. See id. at 854 (limiting application of Miss. Code Ann. § 97-35-15 (1972), entitled "Disturbance of the public peace, or the peace of others").
[2] In some cases, reasons for a sentence enhancement must be affirmatively stated, factually based, and recorded for potential judicial review. This "prophylactic rule" pronounced in North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), is inappropriate in the context of a two-tier judicial system. Accord Colten, 407 U.S. at 118, 92 S.Ct. at 1961, 32 L.Ed.2d at 594; see also Alabama v. Smith, ___ U.S. ___, 109 S.Ct. 2201, 104 L.Ed.2d 865. Pearce is distinguishable from Colten and factually-similar cases because it dealt with a defendant who was re-sentenced by the same judge whose original and less-harsh sentence was quashed. For a more detailed and current discussion concerning this area of law, see Smith, ___ U.S. at ___, 109 S.Ct. at 2201.