# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 93-KA-01114-SCT

### CONSOLIDATED WITH

### 94-KA-00029-SCT

*JERRY L. SCAFIDEL*

*v.*

*STATE OF MISSISSIPPI*

**THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-A**

| | |
|---|---|
| DATE OF JUDGMENT: | 10/27/93 |
| TRIAL JUDGE: | HON. KEITH STARRETT |
| COURT FROM WHICH APPEALED: | PIKE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | PATSY ANN BUSH |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: WAYNE SNUGGS |
| DISTRICT ATTORNEY: | DUNN LAMPTON |
| NATURE OF THE CASE: | CRIMINAL - MISDEMEANOR |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND RENDERED IN PART - 1/23/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SULLIVAN, P.J.,SMITH AND MILLS, JJ.**

**SULLIVAN, PRESIDING JUSTICE, FOR THE COURT:**

Jerry Scafidel was charged with practicing law without a license in violation of Miss. Code Ann. § 73-3-55 in a criminal affidavit filed on September 2, 1992. The trial was held in the County Court of Pike County on November 18, 1992. After all of the evidence was presented, the jury found Scafidel guilty as charged. Pike County Court Judge Thad Leggett sentenced Scafidel to a suspended one year sentence with two years probation pursuant to Miss. Code Ann. § 97-23-43, with Scafidel paying all court costs. As a condition of his probation, Scafidel was required to perform public

service on Saturdays and Sundays for one year. He was also prohibited from performing any other legal services in violation of § 73-3-55.

Scafidel filed a motion for a new trial which was denied by an order filed on December 2, 1992. On December 4, 1992, Scafidel filed his notice of appeal to the Pike County Circuit Court, and on March 25, 1993, he filed a motion to proceed in forma pauperis and for appointment of counsel. Circuit Court Judge Keith Starrett ordered appointment of counsel for Scafidel and granted his motion to proceed in forma pauperis. However, the judge also required Scafidel to deliver certain assets to the court to be sold for partial payment of his attorney and court costs. As a result, Scafidel withdrew his request to appeal in forma pauperis. The circuit court affirmed the judgment and sentence of the county court in an order filed on August 27, 1993.

On September 24, 1993, Scafidel filed his notice of appeal to this Court from the circuit court's order affirming the county court's judgment and sentence. He then filed a motion to appeal in forma pauperis on October 1, 1993. The hearing on this motion was held on October 15, 1993, after which Judge Starrett ordered counsel to be appointed for Scafidel. The circuit court granted Scafidel's motion to proceed in forma pauperis in an order filed on October 27, 1993. However, the court set bond at $5,000.00 and required Scafidel to contribute the greater of $250.00 per month or one-half of his monthly income toward his attorney and court costs. Scafidel filed a motion to reconsider the October 27 order, and on November 15, 1993, Judge Starrett ordered that bond be reduced to $1,000.00, but denied Scafidel's motion to reconsider the monthly payments. On January 4, 1994, Scafidel filed his notice of appeal to this Court from the October 27 order requiring him to make the monthly payments. From a motion filed on February 3, 1994, the two appeals were consolidated in an order by this Court filed on April 15, 1994. On appeal to this Court, Scafidel assigns the following as error:

**I. WHETHER THE TRIAL COURT ERRED IN FAILING TO APPRISE MR. SCAFIDEL OF HIS RIGHT TO COUNSEL AND TO INFORM HIM THAT IF HE COULD NOT AFFORD COUNSEL ONE WOULD BE APPOINTED TO HIM AND TO FIND ON THE RECORD THAT MR. SCAFIDEL MADE A KNOWING AND INTELLIGENT WAIVER OF HIS RIGHT TO COUNSEL.**

**II. WHETHER THE TRIAL COURT ERRED IN SUSTAINING MR. REGAN'S OBJECTION TO QUESTIONS ASKED BY MR. SCAFIDEL TO KATHLEEN HARBOUR ON GROUNDS THAT THE QUESTIONS WERE IRRELEVANT.**

**III. WHETHER THE TRIAL COURT AND THE CIRCUIT COURT JUDGES BOTH ERRED IN FAILING TO FIND THE STATUTE UNDER WHICH MR. SCAFIDEL WAS CHARGED AND CONVICTED CONSTITUTIONALLY OVERBROAD AND VOID FOR VAGUENESS**

**IV. WHETHER THE CIRCUIT COURT JUDGE ERRED IN IMPOSING A MONTHLY OBLIGATION OF PAYMENT OF MONIES TO THE CIRCUIT COURT CLERK OF PIKE COUNTY, MISSISSIPPI TO HELP DEFRAY COURT COSTS AND COURT APPOINTED FEES FOR HIS APPEAL TO THE SUPREME COURT WHEN MR. SCAFIDEL SIGNED AN AFFIDAVIT OF INDIGENCY AND COULD NO LONGER PURSUE THE CAREER IN WHICH HE WAS ENGAGED AT TIME OF TRIAL.**

## STATEMENT OF THE FACTS

Jerry Scafidel operated a business out of his house on Wardlaw Road in McComb, Mississippi performing "legal typing services." His advertisement in local papers stated that he charged $230.00 to $250.00 for bankruptcy and $150.00 for no-fault divorce. The ads further stated, "I am not a lawyer and do not charge like one" and indicated that by using his services, a potential client could save $300.00 to $500.00. A sign in front of his house read "Legal Assistance, Jerry Scafidel."

Robert S. Van Norman read one of Scafidel's ads in the Enterprise-Journal and decided to see Scafidel about filing for bankruptcy. Van Norman was behind on his bills, because he had been laid off from his job as a construction worker. Tired of the constant calls from his creditors, Van Norman first sought to hire a lawyer to handle his bankruptcy at the advice of a couple of his creditors. However, when he called a few lawyers to get an estimate on the cost, he learned that the going rate was between $500.00 and $700.00 for a bankruptcy case. Not having $500.00 to $700.00 to spend, Van Norman instead decided to contact Jerry Scafidel.

When Van Norman and his wife went to see Scafidel at his office, they agreed that Scafidel would prepare and file Van Norman's chapter seven bankruptcy forms for a fee of $230.00. Scafidel instructed Van Norman and his wife to bring him their most recent bills, most recent balances, and their tax returns from the last three years. The Van Normans gave Scafidel the documents that he requested, Scafidel asked the couple some questions, and he wrote the information down on a yellow legal pad.

Scafidel made it clear throughout his transactions with Van Norman that Scafidel was not an attorney, and neither Van Norman nor his wife was ever under the impression that Scafidel was an attorney. In fact Scafidel had Van Norman sign a disclaimer that stated that Scafidel only worked as a secretarial service, was not a lawyer and did not give legal advice. This "information sheet" also recommended certain legal texts for Scafidel's clients to refer to for information on laws and procedures for making their own legal decisions. Among the texts included were Volume 22 of the Mississippi Code on bankruptcy and How to File for Bankruptcy, by Elias Renauer. Van Norman testified at trial that he would never have hired Scafidel if he had read these texts prior to their dealings.

On June 22, 1992, Van Norman went by Scafidel's office on his way out of town for a fishing trip. Van Norman signed the blank bankruptcy forms for Scafidel to fill out and mail over the weekend. Van Norman had no knowledge of the bankruptcy laws or legal terminology required to fill out the bankruptcy forms. He simply provided Scafidel with the financial information that Scafidel requested. Scafidel filled out the forms with no further input from Van Norman and without counseling Van Norman regarding the different types of bankruptcy, regulations governing the bankruptcy process, different property categories, or any other pertinent information. Scafidel mailed Van Norman's bankruptcy petition, and Van Norman attended a creditor's meeting without legal representation in Jackson regarding his bankruptcy. It was at this meeting that Van Norman became aware of the complications in filing for bankruptcy and the law prohibiting a non-lawyer from filling out another person's bankruptcy petition. Van Norman subsequently obtained the services of Jack Price, an attorney in McComb, to handle his bankruptcy case.

Van Norman contacted Pike County Prosecutor William Ben Regan, who filed a criminal affidavit against Jerry Scafidel on September 2, 1992. The affidavit charged Scafidel with practicing law without a license in violation of Miss. Code Ann. § 73-3-55. Scafidel's trial was held in the County Court of Pike County on November 18, 1992. The jury found Scafidel guilty as charged, and Pike County Court Judge Thad Leggett sentenced Scafidel under Miss. Code Ann. § 97-23-43 to a suspended one year sentence with two years probation, with Scafidel paying all court costs. Under the terms of the probation, Scafidel was required to work at public service on Saturdays and Sundays for one year and to refrain from further violations of § 73-3-55.

Scafidel appealed to the Circuit Court of Pike County, Mississippi and made a motion to proceed in forma pauperis and for appointment of counsel. The circuit court appointed Scafidel counsel for purposes of appeal, granted his motion to proceed in forma pauperis, and affirmed the conviction and sentence of the county court. However, the circuit court ordered Scafidel to sell some of his assets to help defray attorney and court costs, so Scafidel withdrew his motion. After the circuit court's affirmance of the lower court's decision, Scafidel appealed to this Court and made a motion for appointment of counsel for that appeal and to proceed in forma pauperis. The circuit court again appointed counsel and again granted his motion to proceed in forma pauperis, but required Scafidel to contribute to the attorney and court costs by paying the greater of one-half of his monthly earnings or $250.00 per month. Scafidel appealed to this Court from the circuit court's order requiring him to help pay court costs. These two appeals from the judgment and sentence and from the order to help pay court costs have been consolidated by order of this Court.

## STATEMENT OF THE LAW

### I.

### WHETHER THE TRIAL COURT ERRED IN FAILING TO APPRISE MR. SCAFIDEL OF HIS RIGHT TO COUNSEL AND TO INFORM HIM THAT IF HE COULD NOT AFFORD COUNSEL ONE WOULD BE APPOINTED TO HIM AND TO FIND ON THE RECORD THAT MR. SCAFIDEL MADE A KNOWING AND INTELLIGENT WAIVER OF HIS RIGHT TO COUNSEL.

Scafidel first argues that he was denied his rights under Amendments Five, Six, and Fourteen of the United States Constitution, because no finding was made in the record that he made a valid waiver of his right to counsel after being informed of that right. Both sides agree that Scafidel was an indigent and that he represented himself at trial. They also agree that the record is silent as to whether Scafidel waived his right to counsel or was informed of such right. The issue here is whether the right to counsel had attached so as to require the trial court to advise Scafidel of that right and determine whether Scafidel made a valid waiver thereof.

In *Argersinger v. Hamlin*, 407 U.S. 25, 37 (1972), the United States Supreme Court held that a criminal defendant cannot be imprisoned for either a felony or a misdemeanor without representation by counsel. The Supreme Court clarified its holding in *Argersinger* through its decision in *Scott v. Illinois*, 440 U.S. 367 (1979). In that case the Court explained that *Argersinger* does not extend to cases in which the criminal defendant is charged with a misdemeanor punishable by a prison term but in which no such sentence is given. *Scott*, 440 U.S. at 368-69. "[T]he Sixth and Fourteenth Amendments to the United States Constitution require only that no indigent criminal defendant be

*sentenced* to a term of imprisonment unless the State has afforded him the right to assistance of appointed counsel in his defense." ***Id***. at 373-74 (emphasis added).

Scafidel argues that the Supreme Court in ***Argersinger*** emphasized that it was not proclaiming to set the standards for state courts on the issue of appointment of counsel for indigents, but merely establishing the federal constitutional requirements. ***Argersinger***, 407 U.S. at 38. It is always true that a state court can set higher constitutional standards than those minimum requirements set out by the United States Supreme Court. However, this Court has not chosen to extend the ruling in ***Argersinger***, but instead has applied that standard at face value. ***See Nelson v. Tullos***, 323 So.2d 539, 545-46 (Miss. 1975); ***Sheffield v. City of Pass Christian***, 556 So.2d 1052, 1054-55 (Miss. 1990) (Robertson dissenting).

Scafidel was charged with practicing law without a license, a misdemeanor that is punishable under § 97-23-43 by up to $200.00 and/or one year imprisonment for a first-time offender, and by up to $500.00 and/or two years imprisonment for a second-time offender. Miss. Code Ann. § 97-23-43. However, Scafidel was not sentenced to actually serve any time in jail. His one year sentence was suspended with a two year probationary period, during which he would perform public service. Since Scafidel was not sentenced to any period of incarceration, the right to counsel did not attach in this case, and the trial court was not required to inform him of such right or to determine whether Scafidel's waiver was valid.

Scafidel points to Miss. Code Ann. § 99-15-15 as requiring appointment of counsel for persons charged with a misdemeanor punishable by ninety days or more imprisonment "where a substantial right may be affected." The full statute reads:

> When any person shall be charged with a felony, misdemeanor punishable by confinement for ninety (90) days or more, or commission of an act of delinquency, the court or the judge in vacation, being satisfied that such person is an indigent person and is unable to employ counsel, may in the discretion of the court, appoint counsel to defend him.
>
> Such appointed counsel shall have free access to the accused who shall have process to compel the attendance of witnesses in his favor.
>
> The accused shall have such representation available at every critical stage of the proceeding against him where a substantial right may be affected.

Reading the statute as a whole, it clearly states that whether counsel is appointed to such a defendant is within the discretion of the court; it is not mandatory, but merely permissive. This argument, therefore is without merit.

The other argument that Scafidel poses is that his Fifth and Fourteenth Amendment rights were violated, because the county court took away his business without representation by counsel and therefore without due process of law. Scafidel points to ***Jones v. Mississippi Farms Co.***, 76 So. 880, 883 (Miss. 1917), in which this Court held that the Fourteenth Amendment protects the right to make contracts. However, the Fourteenth Amendment does not protect unlawful contracting; an individual has no right to make illegal contracts, such as unlawful contracts to practice law without a license, which could cause harm to the general public.

> [N]either property rights nor contract rights are absolute; for government cannot exist if the citizen may at will use his property to the detriment of his fellows, or exercise his freedom of contract to work them harm. Equally fundamental with the private right is that of the public to regulate it in the common interest. . . . The Constitution does not guarantee the unrestricted privilege to engage in a business or to conduct it as one pleases. Certain kinds of business may be prohibited; and the right to conduct a business, or to pursue a calling, may be conditioned. . . . The Constitution does not secure to any one liberty to conduct his business in such fashion as to inflict injury upon the public at large, or upon any substantial group of the people.

*Mississippi Milk Comm'n v. Vance*, 129 So.2d 642, 653-54 (Miss. 1961). Furthermore, the practice of law is a privilege and not a property right. *Levi v. Mississippi State Bar*, 436 So.2d 781, 786 (Miss. 1983). It certainly must follow, then, that the *illegal* practice of law is not a property right. "In order for procedural due process to be invoked, there must be a denial of a right previously recognized and protected by the state." *Mississippi High School Activities Ass'n, Inc. v. Farris*, 501 So.2d 393, 396 (Miss. 1987) (citing *Paul v. Davis*, 424 U.S. 693, 711 (1976)). As already stated above, Scafidel had no right to appointment of counsel in the proceedings below nor any right to practice law without a license, so it cannot be said that failure to appoint him counsel resulted in a violation of due process.

Mississippi has no statutes nor prior case law requiring appointment of counsel for a criminal defendant charged with a misdemeanor but not sentenced to any period of incarceration. Since the right to counsel did not attach in this case, no error occurred in the trial court's failure to find on the record that Scafidel had made a knowing, intelligent waiver of his right to counsel.

## II.

### WHETHER THE TRIAL COURT ERRED IN SUSTAINING MR. REGAN'S OBJECTION TO QUESTIONS ASKED BY MR. SCAFIDEL TO KATHLEEN HARBOUR ON GROUNDS THAT THE QUESTIONS WERE IRRELEVANT.

Scafidel next assigns as error the trial court's exclusion of testimony by defense witness Kathleen Harbour, a member of the Mississippi Bar Association Committee for the Unauthorized Practice of Law. The trial court excluded as immaterial and irrelevant testimony by Ms. Harbour regarding the duties of and number of paralegals and legal secretaries in Mississippi, the repeal of § 73-3-55, H & R Block, income tax preparation, the American Bar Association Commission on Non-Lawyer Practice, the possibility of dying from a mistake made in an appendix operation, and buying band-aids at Wal-Mart or K-Mart.

Scafidel argues that Harbour's testimony regarding paralegals and legal secretaries was relevant as a comparison of their work with his business performing "legal typing." He asserts that this testimony could have affected the probability of whether he was practicing law instead of acting as a mere typist, and that therefore its exclusion was error on the part of the trial court.

"Generally, the admissibility of evidence rests within the trial court's discretion." *Harvey v. State*, 666 So.2d 798, 800 (Miss. 1995)(citing *Baine v. State*, 606 So.2d 1076, 1078 (Miss. 1992). Obviously the testimony regarding band-aids, dying from an appendix operation, H & R Block, and income tax preparation was irrelevant to the case. Miss. Code Ann. § 73-3-401 repeals §§ 73-3-2 through 73-3-

59, effective December 31, 1999. However, the repeal of § 73-3-55 had no bearing on Scafidel's case, because at the time of his arrest on the charge of practicing law without a license and at the time of trial § 73-3-55 was in full effect, and still is in effect to this day. Additionally, Ms. Harbour testified that she was not familiar with the American Bar Association Commission on Non-Lawyer Practice, so any testimony which she would have given about that commission would have been irrelevant. Since paralegals and legal secretaries' work is supervised and authorized by an attorney, the work which they perform has no correlation to or bearing on a case concerning Scafidel's business in which he unlawfully provided legal services without a license and without any supervision by a licensed attorney. As a result, all of this testimony by Ms. Harbour was irrelevant, and the trial court did not abuse its discretion in refusing to allow its admission.

## III.

### WHETHER THE TRIAL COURT AND THE CIRCUIT COURT JUDGES BOTH ERRED IN FAILING TO FIND THE STATUTE UNDER WHICH MR. SCAFIDEL WAS CHARGED AND CONVICTED CONSTITUTIONALLY OVERBROAD AND VOID FOR VAGUENESS

In his next assignment of error, Scafidel asserts that § 73-3-55, under which he was charged, is unconstitutionally overbroad and void for vagueness. Scafidel claims that the statute forbids conduct which is protected by the First, Fifth and Fourteenth Amendments, because the statute infringes on his right to contract and prevents him from exercising his right to choose how he earns a living. He further asserts that he worked merely as a legal typist and was selectively chosen for prosecution from among the legal secretaries, paralegals, and persons who provide bills of sale who perform the same legal typing tasks.

> Under the 'overbreadth doctrine,' a statute may be invalidated if it is fairly capable of being utilized to regulate, burden, or punish constitutionally-protected speech or conduct. . . . Particularly where conduct and not mere speech is involved, the facial overbreadth of a statute must be both real and substantial, judged in relation to the statute's plainly legitimate sweep, to justify holding it to be void on its face as violative of the First Amendment's freedom of expression.

*Jones v. City of Meridian*, 552 So.2d 820, 823 (Miss. 1989) (citing *Thornhill v. Alabama*, 310 U.S. 88, 97 (1940) and *Broadrick v. Oklahoma*, 413 U.S. 601 (1973)). Scafidel claims that § 73-3-55 is overbroad, because it infringes on his right under the First, Fifth and Fourteenth Amendments of the United States Constitution and Article 3, Section 14 of the Mississippi Constitution to choose how he makes his living. However, as discussed above, Scafidel has no constitutionally protected right to practice law without a license. Furthermore, all speech is not protected by the First Amendment. The underlying purpose of § 73-3-55 is to prevent persons like Scafidel from endangering the public and negligently causing them injury by practicing law without a license. This is a compelling governmental interest, and the application of the statute does not overly burden any otherwise unconstitutionally protected speech or conduct. The language of the statute therefore is not unconstitutionally overbroad.

In *Meeks v. Tallahatchie County*, 513 So.2d 563 (Miss. 1987), this Court applied the test for determining whether a statute is unconstitutionally vague as set out in *Connally v. General Construction Co.*, 269 U.S. 385 (1926). "[A] statute which either forbids or requires the doing of an

act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process." *Meeks*, 513 So.2d at 566 (quoting *Connally*, 269 U.S. at 391).

> Generally speaking, a criminal statute is unconstitutional under the due process clause of the Fourteenth Amendment if it is so vague and uncertain that it does not inform those subject to it what acts it is their duty to avoid, or what conduct on their part will render them liable to its penalties. . . . 'The test is whether the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices.'

*Cassibry v. State*, 404 So.2d 1360, 1367-68 (Miss. 1981) (quoting *Jordan v. DeGeorge*, 341 U.S. 223, 231 (1951)). *See also Reining v. State*, 606 So. 2d 1098, 1103 (Miss. 1992). Furthermore, statutes regulating business activities and limiting a narrow category of acts are given "greater leeway" in determining the issue of vagueness. *Gardner v. State*, 531 So.2d 805, 809 (Miss. 1988) (citing *Papachristou v. Jacksonville*, 405 U.S. 156, 162 (1972)).

§ 73-3-55 reads in pertinent part as follows:

> It shall be unlawful for any person to engage in the practice of law in this state who has not been licensed according to law. Any person violating the provisions of this section shall be deemed guilty of a misdemeanor, and, upon conviction, shall be punished in accordance with the provisions of section 97-23-43. Any person who shall for fee or reward or promise, directly or indirectly, write or dictate any paper or instrument of writing, to be filed in any cause or proceeding pending, or to be instituted in any court in this state, or give any counsel or advice therein, or who shall write or dictate any bill of sale, deed of conveyance, deed of trust, mortgage, contract, or last will and testament, or shall make or certify to any abstract of title or real estate other than his own or in which he may own an interest, shall be held to be engaged in the practice of law. . . .

Common understanding and practice dictate that this statute does not prevent paralegals and legal secretaries from typing documents *under the supervision of a licensed attorney*. Scafidel's attempt to align himself with these legal employees fails, because unlike paralegals or legal secretaries, Scafidel worked without attorney supervision and made decisions about how to fill out the bankruptcy forms; he did not merely type the information on the forms as he argues. A person of common intelligence would understand this key difference and could have fair notice by reading § 73-3-55 of what conduct it prohibits. It cannot be said that the statute is unconstitutionally vague under the standards adopted by this Court, so this assignment of error fails.

## IV.

**WHETHER THE CIRCUIT COURT JUDGE ERRED IN IMPOSING A MONTHLY OBLIGATION OF PAYMENT OF MONIES TO THE CIRCUIT COURT CLERK OF PIKE COUNTY, MISSISSIPPI TO HELP DEFRAY COURT COSTS AND COURT APPOINTED FEES FOR HIS APPEAL TO THE SUPREME COURT WHEN MR. SCAFIDEL SIGNED AN AFFIDAVIT OF INDIGENCY AND COULD NO LONGER PURSUE THE CAREER IN WHICH HE WAS ENGAGED AT TIME OF TRIAL.**

Scafidel's final assignment of error alleges that the circuit court judge erred by requiring Scafidel to contribute the greater of $250.00 per month or one-half of his monthly income toward his attorney and court costs. Scafidel further claims that this assessment of costs is premature, citing Rule 36 of the Mississippi Rules of Appellate Procedure. However, Rule 6 of the Mississippi Rules of Appellate Procedure and Miss. Code Ann. § 99-35-105 require the county in which an indigent was convicted of a crime to *prepay* costs of appeal to this Court once the criminal defendant has filed an affidavit showing his inability to pay. In this case, Scafidel filed such an affidavit with his motion to proceed in forma pauperis. The circuit court judge conducted a hearing on the motion and determined that Scafidel would be allowed to proceed in forma pauperis. The court further determined that Scafidel's admitted monthly income was approximately $500.00, so the court ordered Scafidel to make the $250.00 monthly payments to help defray his attorney and court costs. Although it is within the discretion of the trial court to assess costs of appeal, no case law, statute, or procedural rule allows a trial court to require a criminal defendant proceeding in forma pauperis to make such disproportionate payments toward his court costs. It is an abuse of discretion for the circuit court to require Scafidel to pay one-half of his income toward the costs of his appeal once he granted Scafidel's motion to proceed in forma pauperis.

## CONCLUSION

The circuit court committed no error in failing to make findings on the record of Scafidel's waiver of right to counsel, because that right did not attach in this case. The court also exercised proper discretion in its rulings on admission of evidence and in refusing to find § 73-3-55 unconstitutional. For these reasons, we affirm the judgment and sentence of the trial court requiring Scafidel to serve a one year suspended sentence with two years probation and weekend public service. However, the circuit court abused its discretion in requiring Scafidel to pay one-half of his monthly income toward payment of his attorney fees and court costs after finding him to be an indigent. That part of the circuit court's order of October 27, 1993 which required Scafidel to make monthly payments is reversed and judgment is rendered here for Scafidel.

**AFFIRMED IN PART; REVERSED AND RENDERED IN PART.**

**PRATHER, P.J., BANKS, McRAE, SMITH AND MILLS, JJ., CONCUR. ROBERTS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY LEE, C.J., AND PITTMAN, J.**


### ROBERTS, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:

I agree with the majority in all respects except for a portion of issue IV concerning the circuit court judge's requirement that Scafidel contribute the greater of $250 per month or one-half of his monthly income.

It seems to me that the circuit judge had the right intent but reached the wrong result.

Rather than rendering on this issue, I would either (1) remand for a hearing as to a proper and reasonable amount for Scafidel to pay toward attorney and court costs or (2) alternatively and preferably, I would simply require Scafidel to pay $50 per month based upon his record income.

This ten (10%) per centum assessment is fair, does not permit him to avoid payment of costs for an act he knowingly and intentionally committed, and will remind him and the public of the consequences of his act.

Scafidel may voluntarily pay a greater figure if he chooses and the State is free to petition for a hearing on the issue when and if it possesses the proof that Scafidel is able to pay more.

Figuratively speaking, Scafidel worked diligently to stand in this line and, as he approaches the pay window *with some money* in his pocket, he should pay something, and he can pay $50.

Perhaps it will assist him in remembering how he got where he is.

**LEE, C.J., AND PITTMAN, J., JOIN THIS OPINION.**