# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 95-KA-00444-SCT

*ERWIN J. SMITH*

*v.*

*CITY OF PICAYUNE*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/07/95 |
| TRIAL JUDGE: | HON. MICHAEL RAY EUBANKS |
| COURT FROM WHICH APPEALED: | PEARL RIVER COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | EDWARD H. STEVENS |
| ATTORNEY FOR APPELLEE: | BYRON J. STOCKSTILL |
| | OFFICE OF THE ATTORNEY GENERAL |
| | BY: WAYNE SNUGGS |
| DISTRICT ATTORNEY: | RICHARD DOUGLASS |
| NATURE OF THE CASE: | CRIMINAL - MISDEMEANOR |
| DISPOSITION: | AFFIRMED - 9/4/97 |
| MOTION FOR REHEARING FILED: | 9/15/97 |
| MANDATE ISSUED: | 11/25/97 |

**EN BANC.**

**DAN LEE, CHIEF JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1. Erwin J. Smith was convicted in Picayune City Court on July 7, 1993, of disorderly conduct in violation of Miss. Code Ann. § 97-35-7(1) (1972) in that on April 2, 1993, he refused to obey the order of a police officer. Smith appealed to the Circuit Court of Pearl River County and received a trial *de novo*. The circuit court upheld the disorderly conduct statute against a constitutional challenge to its facial validity, and Smith was convicted and sentenced to pay a $500 fine.

¶2. Smith now appeals his conviction and sentence to this Court, raising a challenge only to the facial validity of Mississippi Code Ann. § 97-35-7 (1972). We determine that the statute is constitutional as applied to the facts of this case, and affirm.

## STATEMENT OF FACTS

¶3. Erwin J. Smith is the owner of an arcade in Picayune, Mississippi. On April 2, 1993, Smith learned of a disturbance in his adjoining parking lot, and upon discovering that a small crowd had gathered there, he exited his arcade building and walked onto his lot carrying a baseball bat. Two police officers from the City of Picayune arrived at approximately the same time, and one of the officers ordered Smith to leave the parking lot and to go back inside the building. When Smith refused to leave the parking lot, the officer placed him under arrest. The violation consisted of Smith's refusal to "promptly comply with the command of a law enforcement officer."

¶4. Smith was convicted of the criminal charge in the City Court of Picayune, and appealed to the Pearl River County Circuit Court. By agreement of the parties, the case was presented before the circuit judge without a jury. The circuit court's order of April 7, 1995, reveals that the above facts were stipulated to by the parties, as Smith attempted to rely upon the arguments concerning the facial invalidity of the statute rather than focus upon his actions. The order recites that the parties stipulated that "the officer would testify that Defendant Smith was also ordered to cease cursing, threatening [an] officer, and interfering with the police investigation," and that "[d]efendant does not contest that he was ordered to return inside his building and that he refused to do so, but contends that he did not curse or threaten the officer."

¶5. The circuit judge held that the statute was constitutional and imposed a $500 fine on Smith. Smith now appeals to this Court, and again attempts to divert the constitutional analysis away from his actions. Smith does not argue that the statute is unconstitutional as applied to his case, but argues that the statute is unconstitutionally overbroad, vague, and so devoid of guidelines that it encourages arbitrary enforcement and infringement of fundamental rights guaranteed by the First Amendment and the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States, as well as by Article III, Section 14 of the Mississippi Constitution.

## DISCUSSION OF LAW

¶6. Section 97-35-7 of Mississippi Code Annotated (1972) is entitled "Disorderly conduct; failure to comply with the requests or commands of law enforcement officers; penalties." Smith complains principally that the language within this statute makes it possible for a police officer to arrest anyone who "fails or refuses to promptly comply with or obey a request, command or order of a law enforcement officer . . . to: (i) [a]ct or do or refrain from acting or doing as ordered . . . ." Smith maintains that the language of this statute could be allowed to prevent peaceful public protest or the exercise of any number of fundamental rights, including freedom of speech, freedom of assembly, and the right to move freely.[1]

¶7. Such a challenge based upon "overbreadth" will invalidate a statute which is fairly capable of being utilized to regulate, burden, or punish constitutionally protected speech or conduct. *Jones v. City of Meridian*, 552 So. 2d 820, 824 (Miss. 1989). A statute attacked on grounds of vagueness, on the other hand, is void if "individuals of common intelligence must necessarily guess at the meaning and differ as to its application." *Id*. In *Nichols v. City of Gulfport*, 589 So. 2d 1280 (Miss. 1991), this Court said:

> The law, of course, should give fair notice of offending conduct, or else the law is void for vagueness. Recently, the Supreme Court of the United States defined the void-for-vagueness doctrine in *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858-59, 75 L.Ed.2d 903,

909 (1983):

> As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. Although the doctrine focuses both on actual notice to citizens and arbitrary enforcement, we have recognized recently that the more important aspect of vagueness doctrine 'is not actual notice, but the other principal element of the doctrine--the requirement that a legislature establish minimal guidelines to govern law enforcement.' Where the legislature fails to provide such minimal guidelines, a criminal statute may permit 'a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections.'

*Id*. at 1282.

¶8. Smith also argues that the statute should be subject to the highest level of scrutiny, as it is capable of reaching various forms of speech. "Where the activity to be regulated is capable of reaching First Amendment rights, the statute or ordinance should be subjected to heightened scrutiny." *Nichols v. City of Gulfport* at 1283, citing *Keyishian v. Board of Regents*, 385 U.S. 589, 604 (1967). Where a constitutional right is so affected, the statute must be drawn with precision and narrowly tailored to serve a legitimate objective, or it fails the overbreadth inquiry. *Mississippi High School Activities Ass'n, Inc. v. Coleman*, 631 So. 2d 768, 778 (Miss. 1994).

¶9. We point out that in this case the statute was applied to conduct, not speech. The presence of the baseball bat, regardless of whether Smith was cursing or threatening the officer, greatly enhanced the possibility of grievous injury to the police officers or others if the disturbance escalated. In light of the facts, it seems imminently reasonable for the officer to have attempted to distance a potentially lethal weapon from a crowd of people. Therefore, we hold that the statute is constitutional as applied to the facts of this case. This case does not concern the right of Smith to remain upon the part of his property of his choosing, but rather concerns the right of the officer to control conduct on that property which greatly increased the potential for sudden violence. As the police officers arrived on the scene, it must have quickly become apparent that it was imperative to remove the greatest danger by immediately dealing with the threat of a person approaching an ongoing fight carrying a baseball bat.

¶10. We note that this Court has previously addressed the constitutional validity of a statute which made it a crime to disobey an order of a police officer. In *Farmer v. State*, 161 So. 2d 159 (Miss. 1964), a predecessor to the current statute was challenged on principles of vagueness and the possible imposition upon a multitude of fundamental rights. This Court held that the statute passed constitutional muster. In *Nichols v. City of Gulfport*, this Court recognized that drafting certain ordinances poses "special problems of draftsmanship and enforcement" and that the subject addressed by the ordinance "makes resort to broadly stated definitions and prohibitions not only common but difficult to avoid." *Id*. at 1283 (citation omitted). The drafting of a disorderly conduct statute falls into just such a category, as the statute must empower officers to deal with a myriad of potential disasters on a moment's notice.

## CONCLUSION

¶11. The conviction at issue resulted from prosecution for the failure to obey a reasonable request of a police officer which merely asked that Smith remove himself and his baseball bat from the immediate area of the disturbance and to return inside his building. Smith cannot reasonably assert that the statute, as written, does not provide adequate notice that the failure to obey an order under such circumstances could result in arrest. Thus, we determine that the statute is constitutional as applied to the facts of this case.

¶12. **CONVICTION OF DISORDERLY CONDUCT UNDER MISS. CODE ANN. § 97-35-7(1) AND SENTENCE TO PAY A FINE OF $500.00 AND ALL COURT COSTS AFFIRMED.**

**PRATHER, P.J., PITTMAN, ROBERTS AND SMITH, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J., BANKS AND MILLS, JJ.**


**McRAE, JUSTICE, DISSENTING:**


¶13. The majority's finding that Miss. Code Ann. § 97-35-7(1), as applied to the facts of this case, is not constitutionally overbroad ignores the fact that Erwin Smith had the right to be present on his own property while police stifled a disturbance in the parking lot of his place of business. Smith's right to be present on his property is tantamount to the police officer's right to order him to leave his property. His conviction for disorderly conduct pursuant to the statute should be reversed. Accordingly, I dissent.

¶14. In *Wright v. Georgia*, 373 U.S. 284 (1963), the United States Supreme Court considered a statute which was said to justify prosecution for a "breach of the peace" on the part of anyone who "failed to obey the command of a police officer." *Id*. at 291-292. In that case, a group of black men who were gathered in a public park were ordered by police to disperse and to leave the area. The *Wright* Court determined that "if petitioners were held guilty of violating the Georgia statute because they disobeyed the officers, this case falls within the rule that a generally worded statute which is construed to punish conduct which cannot constitutionally be punished is unconstitutionally vague." *Id*. The Court also determined that "the possibility of disorder by others cannot justify exclusion of persons from a place if they otherwise have a constitutional right . . . to be present. *Id*. at 293.

¶15. In the case *sub judice*, Smith, the property owner, had a constitutional right to be present and to witness the events unfolding in his parking lot. The disturbance there, at the very least, could have subjected him to possible future liability or resulted in damage to his property. Further, the temporary suspension of his right to be present on his property and subsequent arrest resulting from his refusal to "promptly obey a lawful order of an officer" was issued under the authority of a statute written in such a manner as to quell peaceful protest and other forms of expression fundamental to a democracy.

¶16. In *Papachkistou v. Jacksonville*, 405 U.S. 156 (1972), the United States Supreme Court determined that vague disorderly conduct statutes allow arbitrary and discriminatory law enforcement by impermissibly delegating basic policy matters to police officers, judges, and juries for resolution on an ad hoc and subjective basis. The statute at issue, which allows an individual to be prosecuted for

the failure to "act or do or refrain from acting or doing as ordered," is drafted in just such a manner. The reasonable exercise of many rights including freedom of movement and travel, assembly, and speech are fundamental to our way of life. Therefore, the power to temporarily suspend such rights through a command given by an officer must be defined with great care. Absent the imposition of martial law, a citizen going about his or her daily activities should not be subject to the order of a police officer which impacts the range of freedoms of movement or speech unless the officer holds a reasonable suspicion that the person has or is about to commit a crime. This is consistent with *Wright* and *Papachkistou*. *See also* **State v. Werstein**, 211 N.W. 2d 668, 676 (Wis. 1973)(any police order in contravention of the legal exercise of a right is an "unlawful order" of a police officer; courts of that state had never held that "the mere refusal to obey a police command constituted disorderly conduct.").

¶17. Section 97-35-7(1) is written in such a manner that "persons of . . . common intelligence must necessarily guess at its meaning and differ as to its application," **Connally v. General Construction Co.**, 269 U.S. 385 (1926), which "infirmity violates the first essential of due process of law." **Nichols v. City of Gulfport**, 589 So. 2d 1280, 1282 (Miss. 1991). As Smith's arrest clearly illustrates, the statute is written in a manner which allows for arbitrary enforcement and selective infringement upon fundamental constitutional rights. We would not a tolerate a statute that left open the possibility that a man could be ordered from his home while police trooped inside to turn down an overly loud stereo. Likewise, a statute that can be construed as making it a crime for a man to refuse to leave his business property when so ordered by police is constitutionally overbroad. Accordingly, I do not join the majority opinion.

**SULLIVAN, P.J., BANKS AND MILLS, JJ., JOIN THIS OPINION.**

1. The statute, in relevant part, contains the following language:

> (1) Whoever, with intent to provoke a breach of the peace, or under such circumstances as may lead to a breach of the peace, or which may cause or occasion a breach of the peace, fails or refuses to promptly comply with or obey a request, command, or order of a law enforcement officer . . . to:
>
> . . .
>
> (i) Act or do or refrain from acting or doing as ordered, requested or commanded by said officer to avoid any breach of the peace at or near the place of issuance of such order, request or command, shall be guilty of disorderly conduct, which is made a misdemeanor and, upon conviction thereof, shall be punished by a fine of not more than five hundred dollars ($500.00) or imprisonment in the county jail for not more than six (6) months, or by both such fine and imprisonment.