797 So.2d 1037 (2001)
Montgomery GRIFFITH a/k/a Montgomery Griffith-Mair, Appellant,
v.
CITY OF BAY ST. LOUIS, Mississippi, Appellee.
No. 2000-KM-00013-COA.
Court of Appeals of Mississippi.
July 31, 2001.
Rehearing Denied October 23, 2001.
*1038 James G. Tucker III, Bay St. Louis, for Appellant.
Samuel Trent Favre, Bay St. Louis, for Appellee.
Before McMILLIN, C.J., PAYNE, LEE, and IRVING, JJ.
IRVING, J., for the Court:
¶ 1. Montgomery Griffith was charged and convicted of simple assault, trespassing and disturbing the peace in the Municipal Court of Bay St. Louis. He appealed to the Circuit Court of Hancock County where, after a trial de novo, he was again found guilty. He was fined five hundred dollars for each conviction, given a suspended sentence of eighteen months and five years probation subject to good behavior and certain specific conditions of probation.
¶ 2. In this appeal, Griffith asserts five issues which we have rephrased and combined into four as follows: (1) the circuit court lacked jurisdiction, (2) the trespass and disturbing the peace affidavits charge no crime, (3) the guilty verdict of simple assault is against the weight of the evidence and is not undergirded thereby, and (4) the sentence is unlawful in that it imposed a post-trial gag order upon the defendant in violation of the First Amendment.
¶ 3. Finding no reversible error, we affirm.

*1039 FACTS
¶ 4. This appeal emanates from an altercation between Griffith and Marsha Favre. Favre drove into the driveway of a piece of property she had purchased from Griffith and noticed that Griffith had pulled in behind her. Favre requested that Griffith leave her property, but he refused, stating that he desired to speak with her. She renewed her request for Griffith to leave, and Griffith responded by calling her a slut and one of the horsemeat gang.[1] At this point, both Griffith and Favre were out of their cars and standing near each other. After Favre's refusal to speak with Griffith, he made a motion toward his vehicle. In doing so, he bumped into her chest area with his shoulder. A neighbor who witnessed the incident testified that she witnessed Griffith holding Favre by her wrists. Griffith claimed that, as a result of the fray, his shirt was ripped and a family heirloom pectoral cross was torn from his neck and never recovered.

ANALYSIS OF THE ISSUES

I. Circuit Court Jurisdiction
¶ 5. Griffith argues that the circuit court lacked jurisdiction because the record from the municipal court failed to show a separate sentence for each conviction. He argues that, to be final, the judgment must reflect the sentence on each conviction. In support of his argument, Griffith cites Rules 12.02 and 3.10 of the Uniform Rules of Circuit and County Court Practice. Without compliance with these rules, according to Griffith, the appellate court lacks jurisdiction to hear the case on appeal.
¶ 6. Rule 12.02 of URCCC provides in parts that:
Any person adjudged guilty of a criminal offense by a justice or municipal court may appeal to county court or, if there is no county court having jurisdiction, then to circuit court by filing simultaneously a written notice of appeal and cost bond within 30 days of such judgment with the clerk of the circuit court having jurisdiction. This written notice of appeal and posting cost bond perfects the appeal.

* * *
It shall be the duty of the judge from whose judgment the appeal is taken to deliver to the clerk of the circuit court, within 10 days after the appeal bond and cost, as required herein, are given and approved, a certified copy of the record in the case with all the original papers in the case.
(emphasis added).
¶ 7. In the case sub judice, the municipal court sent to the circuit court a certified copy of the record, and there is no contention that this was not done. Rule 12.02 expressly provides that the appeal is perfected upon the filing of the notice of appeal and posting of the bond. Clearly, perfection of the appeal confers upon the appellate court the power to decide the appeal.
¶ 8. Rule 3.10 of the Uniform Rules of Procedure for Justice Court provides:
Where the defendant is adjudged guilty of the offense charged, sentence must be imposed without unreasonable delay. A defendant is adjudged guilty when the defendant has been found guilty by a verdict of the jury, found guilty by the court sitting as a trier of fact, on the *1040 acceptance of a plea of guilty, or on acceptance of a plea of nolo contendere.
We fail to see any relevance of Rule 3.10 to the issue before us. Therefore, we decline further discussion as to it.
¶ 9. As stated, after the appeal was initiated, the municipal court forwarded the record to the circuit court. Among the documents certified to the circuit court was a document setting forth the disposition of the case in the Municipal Court of the City of Bay St. Louis. That document provided that Griffith had been convicted of simple assault, trespassing and disturbing the peace and ordered to pay fines of $300 plus assessments of $147.[2] Griffith does not argue that he was not convicted of the three separate offenses and sentenced to pay the fines and assessments. His argument is that the document from the municipal court does not show a separate penalty for each offense. It is not clear to us from the sentencing document in the record whether Griffith was fined $300 plus $147 in assessments for each offense or whether the aggregate fine and assessment was $300 and $147, respectively. For sure, that document could have been clearer. Nevertheless, the procedure used here did not negate, for lack of form, compliance with the certification provision of Rule 12.02. We have not found any precedent, nor has Griffith cited any, which holds that a judgment of conviction on multiple offenses is defective, and robs the appellate court of jurisdiction, if it sets forth the penalty collectively, rather than severally, for the separate offenses.

II. The Trespass and Disturbing the Peace Affidavits
¶ 10. Griffith's second argument is that the affidavit accusing him of trespass is legally defective in that it fails to recite the essential elements of the offense. More specifically, Griffith asserts that the affidavit fails to allege entry upon or refusal to leave the premises over the owner's objection.
¶ 11. We have searched the record and can find no place in the record where Griffith objected to the legality of the affidavits in the court below. An objection to an affidavit in a criminal case cannot be made for the first time on appeal. Evans v. State, 92 Miss. 34, 45 So. 706, 707 (1908). To properly challenge an affidavit in a criminal case the objecting party must raise the objection during the lower court proceeding so that the trial court can rule on its sufficiency. See id. The recourse offered for an improper affidavit is the opportunity to amend such affidavit. See id.
¶ 12. Here, Griffith failed to raise an objection to the affidavit at the proper time, and thus waived the right to do such. Therefore, this claim is procedurally barred and not properly before this Court.
¶ 13. Even if the claim were not procedurally barred, we do not find reversible error. The affidavit was captioned "The City of Bay St. Louis v. Montgomery Griffith-Mair," but Griffith's name was not inserted in the body of the affidavit. The affidavit charged that "[name omitted] did, within the incorporated limits of said city, on or about the 31st day of August, A.D. 1999, did willfully and unlawfully trespass upon the real property of Marsha [Favre] at 312 Union." (emphasis added). Following the charging portion of the affidavit, the affidavit contains the following wording, "Trespassing 97-17-87." The cited code section provides in pertinent *1041 part that "[a]ny person who shall be guilty of a wilful or malicious trespass ... shall be fined ... or imprisoned ...." (emphasis added).
¶ 14. Griffith does not complain about his name being omitted from the body of the affidavit. Therefore, we do not address this irregularity. As to his complaint that the affidavit does not contain language detailing the actions which constitute the trespass, it is sufficient to say that those facts are not required to be pled in the affidavit. The affidavit charged that a wilful and unlawful trespass occurred. While it was necessary for the City of Bay St. Louis to prove at trial facts constituting a wilful or malicious trespass on the part of Griffith, the charge of trespass was properly lodged by the recitation of the language of the statute.
¶ 15. Griffith also contends that the "disturbing the peace" affidavit charges no crime inasmuch as the conduct described therein is protected speech. As is the case with the trespass affidavit, Griffith's name is listed in the caption but not in the body of the affidavit. Again, Griffith does not raise this issue. The affidavit charged that "[no name], did within the incorporated limits of said city, on or about the 31 day of August, A.D.1999, did wilfully and unlawfully disturb the peace of Marsha Favre at 312 Union by use of use of [sic] indecent and offensive language in that he called her a horse meat person, b___h, slut."
¶ 16. The gist of Griffith's argument here is that the court has misconstrued his words as "fighting" words, which is speech not protected by the Constitution. His words, Griffith asserts, were not fighting words, and thus, were protected under the First Amendment of the United States Constitution.
¶ 17. Pursuant to the First Amendment, the government may not enact laws that prohibit the free speech of any citizen of the United States. However, since its inception, case law has limited this broad protection and excluded from its parameters "fighting words." Fighting words have been defined as words that an individual of "common intelligence" would understand "as likely to cause an average addressee to fight." Gooding v. Wilson, 405 U.S. 518, 523, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972); Jones v. City of Meridian, 552 So.2d 820 (Miss.1989) (adopting "common intelligence" test). These words have also been defined as words calculated to bait another into a fight. See Chaplinsky v. New Hampshire, 315 U.S. 568, 572, 62 S.Ct. 766, 86 L.Ed. 1031 (1942). The result of this line of case law was to create an exception to the sweeping protection of speech under the First Amendment allowing laws to be enacted which punish speech that is likely to invoke its hearers into an altercation.
¶ 18. While Griffith is correct in his analysis of what is protected speech versus unprotected speech, he, nevertheless, incorrectly categorizes his speech. In our opinion, calling someone a b__h and a slut is likely to cause an average addressee to fight.

III. Sufficiency and Weight
¶ 19. Griffith argues that the judgment of guilt of simple assault is against the weight of the evidence and that the evidence is insufficient to support it. The standard of review for trials without a jury where the judge is the trier of fact and law is set forth in Cotton v. McConnell, 435 So.2d 683 (Miss.1983). The appellate court will not disturb or set aside the findings of the trial court unless they are "manifestly wrong." Id. at 685. More specifically, the standard of review for a weight and sufficiency challenge requires *1042 this Court to view all of the evidence in the light most consistent with the verdict or judgment. See Garrett v. State, 549 So.2d 1325, 1331 (Miss.1989). Further, the prosecution is given "the benefit of all favorable inferences that may reasonably be drawn from the evidence." Id.; see also Culbreath v. Johnson, 427 So.2d 705, 707 (Miss.1983) (holding that appellate court will accept all evidence which reasonably tends to support the findings). Ultimately, Garrett explains that reversal is warranted only where the facts and inferences weigh on the side of the accused with "such sufficient force that reasonable men could not have found beyond a reasonable doubt that he was guilty." Garrett, 549 So.2d at 1331.
¶ 20. Griffith asserts that the only disinterested witness that testified and actually observed the entire incident was Deborah Keeton. He explains that Ms. Keeton testified that Favre moved toward Griffith, and he subsequently grabbed her wrists and called for help.
¶ 21. Our analysis of the record reveals that the evidence is more than sufficient to prove the crime of assault. A person is guilty of simple assault if he (a) attempts to cause or purposely, knowingly or recklessly causes bodily injury to another; or (b) negligently causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm; or (c) attempts by physical menace to put another in fear of imminent serious bodily harm. Miss.Code Ann. § 97-3-7 (Rev.2000). There was testimony from Favre and Ms. Keeton that Griffith was addressing Favre in a confrontational and intimidating manner. According to their testimony, Griffith was acting in a manner in which Favre may have reasonably felt an immediate threat of bodily harm. An assault can be committed without any physical touching; however, in this case Griffith grabbed her wrists in an aggressive manner. These acts clearly present the necessary requirements under the simple assault statute.

IV. The Terms and Conditions of Probation
¶ 22. In his final assignment of error, Griffith asserts that some of the conditions of his suspended sentence constitute a violation of his First Amendment right to free speech. In the order suspending the execution of the sentence and placing Griffith on probation, the trial judge imposed the following conditions of probation:
a.) Defendant shall not have any contact nor communication with the victim in this case or the victim's family, regardless of who initiates said contact or communication;
b.) Defendant shall not have any contact nor communication with the witnesses in this case, or their families, regardless of who initiates said contact or communication;
c.) Defendant shall not have any communication with any third party regarding said victim, witnesses, or families, regardless of who initiates said communication, including, but not limited to, communications wherein said people are identified by means other than by use of their names or are described in any manner;
d.) Defendant shall not publish nor post, nor cause to be published or posted, nor participate in the publishing of or posting of, any information or communication regarding said victim, witnesses, or families in any medium, including, but not limited to, the use of the Internet or flyers; and
e.) Defendant shall, within ten days from the entry of this Order, remove *1043 any and all information and/or communications in conflict with this Order previously posted or published by him in any medium, including, but not limited to, that published on the Internet or by flyer.
¶ 23. Griffith is exactly right, the judge's order does restrict his right of free speech. However, what he fails to realize is that the order is a result of his own behavior that resulted in a conviction of three criminal offenses. As stated, the trial judge sentenced Griffith to eighteen months in jail and a fine of $1500. However, he suspended the jail term and $500 of the fine and placed Griffith on probation for a period of five years on the aforesaid conditions. While every citizen enjoys a right of free speech, as guaranteed by the First Amendment, that right is not an unabridged right. When he committed the offenses, Griffith placed himself in a position to have that right restricted. The very nature of a criminal sentence, including conditions of probation, is to limit one's rights and privileges. If Griffith does not wish to live by the terms and conditions of his probation, he is free to ignore them, in which case, he will forfeit his right to forego serving the jail time and payment of $500 of the fine imposed.
¶ 24. THE JUDGMENT OF THE CIRCUIT COURT OF HANCOCK COUNTY OF CONVICTION ON COUNT I, SIMPLE ASSAULT, COUNT II, TRESPASSING AND COUNT III, DISTURBING THE PEACE AND COMBINED SENTENCES OF EIGHTEEN MONTHS AND COMBINED FINES OF $1500 WITH THE SUSPENSION OF THE JAIL TERM AND $500 OF THE FINE AND PROBATION FOR FIVE YEARS SUBJECT TO GOOD BEHAVIOR IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING and SOUTHWICK, P.JJ., PAYNE, BRIDGES, THOMAS, LEE, MYERS and CHANDLER, JJ., CONCUR.
NOTES
[1] This is a reference to a group of individuals involved in a civil suit who were opposed to a horse stable operating in the area.
[2] The document containing the pronouncement of the convictions and sentence was not captioned or entitled "judgment", but it did state that Griffith was found guilty of the three offenses and "ordered to pay fines of $300 plus assessments of $147."