# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-KA-01117-COA

TOMMY TIEN VU                                                    APPELLANT

v.

STATE OF MISSISSIPPI                                             APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 07/17/2024 |
| TRIAL JUDGE: | HON. ROBERT KEITH MILLER |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: MOLLIE MARIE McMILLIN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: DANIELLE LOVE BURKS |
| DISTRICT ATTORNEY: | ANGEL MYERS McILRATH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 04/07/2026 |
| MOTION FOR REHEARING FILED: | |

## BEFORE CARLTON, P.J., LAWRENCE AND LASSITTER ST. PÉ, JJ.

## LAWRENCE, J., FOR THE COURT:

¶1.     On the morning of July 10, 2022, Tommy Tien Vu kicked open the door to Kailee Mapp's home in Jackson County, Mississippi. Once in Mapp's house, Vu "scream[ed] and yell[ed]" at Mapp and took her telephone away from her. Mapp told her daughter to call the police, who arrested Vu upon arrival.

¶2.     Vu was indicted under Mississippi Code Annotated section 97-17-23(2) (Rev. 2020) for "unlawfully, willfully, feloniously, and burglariously break[ing] and enter[ing] the dwelling house of Kailee Mapp . . . with the intent to commit assault therein, under circumstances likely to terrorize Kailee Mapp." Vu was convicted of burglary as charged by

a jury and sentenced as a habitual offender to serve twenty-five years in the custody of the Mississippi Department of Corrections without eligibility for parole or early release.[1] Vu moved for a new trial, or in the alternative, for judgment notwithstanding the verdict. The trial court denied Vu's motion. Aggrieved, Vu appealed arguing 1) the evidence was insufficient to support the conviction for burglary; 2) the trial court erred by allowing the admission of evidence of Vu's prior bad acts; and 3) Vu's trial counsel was ineffective. After review, this Court affirms Vu's conviction.

## FACTS AND PROCEDURAL HISTORY

¶3.     In the early morning hours on July 10, 2022, Vu kicked his way into Mapp's rental house in Jackson County. Mapp lived at the home with her three children, two of whom she had with Vu years before this incident when they dated. Vu was arrested and ultimately indicted by the Jackson County grand jury for burglary of an occupied dwelling "with the intent to commit an assault therein, under circumstances likely to terrorize Kailee Mapp[,]" pursuant to section 97-17-23(2).

¶4.     Prior to trial, on July 8, 2024, Vu filed a motion in limine to exclude any reference to Vu's "prior bad acts[,] . . . felony or misdemeanor convictions, arrests, or allegations levied against" Vu. The motion makes no mention of what exactly was intended to be excluded. No prior acts, felonies, misdemeanors, arrests, or allegations are specified. It is impossible for this Court to know exactly what Vu and his attorneys were attempting to exclude by filing the motion.

---

[1] Before trial, Vu's indictment was amended to charge Vu as a habitual offender under Mississippi Code Annotated section 99-19-81 (Rev. 2020).

¶5.     Vu's jury trial occurred on July 15-16, 2024. On the first day of trial, the court held a hearing on the motion in limine, when the venire was in the courthouse. Defense counsel argued the "motion in limine for the State not to provide any evidence 401, 402, 403 and 404(b) and 609, excluding any reference to any and all prior bad acts and reputation in the community for same for our client, Mr. Vu, except upon appropriate exceptions to those rules." The defense argued nothing more specific. The State responded to the motion by asserting that it intended to elicit two matters which would apply—Rule 609 impeachment with prior felonies if Vu testified and the misdemeanors for which Vu was previously convicted as a result of his kicking in Mapp's door on the day in question.[2] The defense ultimately told the court it had "no objection to that coming in." The trial court entered an order granting the defense's motion in part and specifically ruled, "with no objection from defense counsel," that Vu's prior convictions "from the Jackson County Justice Court related to his conduct on July 10, 2022, shall be admissible at the trial of this matter."

¶6.     The trial subsequently commenced, and the State called Officer Kenneth Safford to testify. Officer Safford was employed with the Jackson County Sheriff's Department and testified that on July 10, 2022, he "was working road patrol" when he was called to respond to "a domestic violence in progress, where a door had been kicked in." He was also informed that "Vu was the one that had kicked in the door" and "was inside the house."

¶7.     When Safford arrived at the scene, he first saw a man, Kevin Tran, standing by Tran's

---

[2] Vu was charged in justice court with the misdemeanors: simple assault, disorderly conduct, and resisting arrest. He was convicted of all three charges, and proof of all three convictions were admitted into evidence without objection, despite the simple assault arguably being the only one relevant to this case.

3

car. Tran informed Officer Safford that Vu was still inside the apartment. Officer Safford testified that the front door was open, and "the door frame was damaged." Vu was "standing in the living room close to the couch, near the front door[,]" and Mapp was standing beside Vu. Officer Safford "immediately started giving [Vu] the command to come out of the apartment," but Vu did not comply. When Officer Safford stepped into the duplex, Vu "tried to close the door," but Officer Safford "kept the door from [closing]." Officer Safford explained that when he went to grab Vu, Vu "began resisting and . . . fell back onto the couch and [was not] following any commands." Officer Safford testified that once Sergeant Joel Tanner arrived, they were able to "put hands on [Vu] and [Vu] went to the ground." Once on the ground, Officer Safford and Deputy Tanner were able to handcuff Vu.

¶8.     The State's next witness was Sergeant Joel Tanner of the Jackson County Sheriff's Department. At the time of Vu's arrest, Sergeant Tanner was working in the traffic division of the Jackson County Sheriff's Department. Sergeant Tanner testified that he arrived at the scene after Officer Safford. When Sergeant Tanner "exited [his] vehicle [he] heard a lot of hollering[,] screaming[,] and commotion towards the residence." Sergeant Tanner explained that when he "made it to the door frame" of the residence, he noticed that "the door frame was broken from outside[,]" indicating "that some type of force was used to open the door." Sergeant Tanner also testified that a picture of the door that was admitted into evidence indicated it was locked at the time it was kicked in, due to the deadbolt still being engaged. Sergeant Tanner witnessed Officer Safford "trying to take [Vu] from the couch to the floor to detain him in handcuffs." Officer Safford and Sergeant Tanner had to "tussle" and "fight"

4

with Vu because "[h]e was resistant[,]" but the officers ultimately got Vu in handcuffs and removed him from the residence.

¶9. Once Sergeant Tanner detained Vu and placed him in the back of his patrol vehicle, he went back inside the residence to talk to Mapp and the witnesses. Sergeant Tanner explained that "from what [he] gathered . . . [Vu] entered [Mapp's residence] to fight [Mapp] and [Tran] and take the kids." Sergeant Tanner called the sheriff department's Criminal Investigations Division and then transported Vu to the adult detention center. Sergeant Tanner charged Vu with misdemeanors of simple assault, resisting arrest, and disorderly conduct. Sergeant Tanner testified that on September 1, 2002, Vu was found guilty of the misdemeanors. The State then entered the justice court judgments for the misdemeanors into evidence, without objection from the defense.

¶10. The State's next witness was Mapp. She testified that she and Vu were previously in a "six or seven year[]" relationship, but they never married. When Mapp and Vu were in a relationship, they lived in an apartment together and had two children.[3] Mapp explained that in 2020, the couple separated, and Mapp and their two children moved out of the apartment and eventually moved into the duplex where the incident occurred. Mapp's rental agreement for the duplex was entered into evidence, and it supported her testimony that she was the only one listed on the lease for the duplex. Mapp testified that Vu never resided in that residence with Mapp and her children.

¶11. Mapp also testified that after their separation, Mapp filed a proceeding in the Harrison

---

[3] Mapp has three children in total. Vu is the two older children's father.

5

County Chancery Court to establish paternity, determine custody, and establish visitation for the children. The final judgment, which was admitted into evidence without objection, granted Mapp physical custody of the children and gave Vu no visitation rights, except in Mapp's sole discretion.[4] The final judgment also granted a restraining order that prohibited Vu from coming within 500 yards of Mapp's home or place of employment. Further, the final judgment "enjoined [Vu] from having any contact with [Mapp], in any way shape or form, either directly or indirectly" and authorized law enforcement to "remove [Vu] from the premises should he appear at [Mapp]'s home." Mapp testified, however, that she allowed Vu to see the children at times "based on just how [she] felt was fit."

¶12. Mapp also testified that on July 10, 2022, she and Vu had been separated for two years. She explained that on the morning of July 10, she was home with her three children, one of her children's friends, and Tran. She woke up because she "heard the kids say[ing] that their dad was at the door," and she "heard knocking." Mapp testified that she went to the kitchen to get some water to "process if [she] was going to let [Vu] in." While she was "process[ing,]" Vu "kicked in the door." When Vu kicked in the door, Mapp "was shocked," and she told the children to go "in the back rooms." Tran "was either in the back room or left." Once inside the house, Vu "was angry and just yelling . . . at [Mapp]" and "yelling at

_____

[4] The chancery court order was entered into evidence without requested redactions or objections from the defense attorneys. The order included the following language Vu now objects to in this appeal: "[Vu] is currently homeless, unemployed and on felony probation. . . . [Mapp] testified that [Vu] had harassed and stalked her, including appearing at her place of employment . . . . [Vu] had to be transported because he was charged with a second felony while on bond for another felony . . . [Vu] had a history of drug use, including heroin and methamphetamine . . . [Vu] was arrested shortly after being released from jail."

6

[Mapp] in [her] face." Vu took Mapp's phone from her, which made Mapp feel "defenseless" and "scared." Mapp then "went to the back room and [she] told [her daughter] to call 911." Law enforcement arrived about ten to fifteen minutes later.

¶13. The State also called Tran as a witness. He testified that he spent the night at Mapp's house. On the morning of July 10, he heard a knock at the door. He watched as Mapp "got up and started walking down her hallway," but "before she could get to the door, the door was kicked in. And the kids were crying" and running around the duplex. Tran testified that he felt "fear [and] intimidation[,]" and he saw Vu "point his finger" in Mapp's face. Tran testified that during "the whole altercation [he] was in the room consoling all the kids" because "every single one of them [was] crying." Tran explained that Mapp's oldest daughter attempted to call the police department, but she was too shaken up to communicate with the operator, so Tran explained the situation to the operator. "At some point" Tran made his way to the front of the house, and officers eventually arrived at the scene.

¶14. After Tran's testimony, the State called Sergeant Justin Quinley of the Jackson County Sheriff's Department's Criminal Investigation Division as their last witness. Sergeant Quinley testified that he reviewed the report made by Sergeant Tanner regarding Vu's domestic dispute at Mapp's house. Sergeant Quinley also reviewed the photographs and body-camera footage from the scene and conducted an interview with Mapp. During the interview, Mapp told Sergeant Quinley that Vu had "been stalking her for two years, and that she was terrified that he was following her around." Sergeant Quinley also testified that during the interview, she "made several statements indicating she was fearful of physical

7

violence from . . . Vu" and that Vu would have harmed her on July 10, 2022, but "she had her 3-year old in her arms, and that was preventing . . . Vu from assaulting her." Sergeant Quinley testified that he was a SWAT team member and had experience with mechanical breaching. He explained that based on the photographs, it was obvious "that there was exterior force applied to [the] door that broke the doorjamb, which forced the door open."

¶15. Sergeant Quinley collected several documents from Mapp, including a chancery court order and her rental agreement. The rental agreement stated that the lease was solely in Mapp's name and that there was no indication that Vu had any sort of ownership or rights to the property. Sergeant Quinley testified that Vu's "name is not mentioned on the lease agreement at all." He also testified that the chancery court order "said that [Vu] was not allowed within close proximity of the residence at all. He was not allowed to live there with [Mapp], and he wasn't allowed to contact her."

¶16. Sergeant Quinley further testified that the Jackson County Adult Detention Center records all phone calls made by inmates. Sergeant Quinley researched Mapp's phone number in the detention center's phone records and discovered that 118 attempted calls had been made to Mapp's phone since Vu's incarceration. He admitted that the recordings of some of those phone calls indicate that Vu was talking to his children. Vu did not use his incarceration pin to make all 118 phone calls. However, Sergeant Quinley explained that "in an attempt to hide their identity, [inmates] will utilize other inmates' pin numbers, especially if they're calling witnesses or victims associated with their crimes." He also explained that inmates use other inmates' pin numbers if they do not have money in their accounts. The

recordings of the telephone calls were not admitted into evidence.

¶17. After Sergeant Quinley's testimony, the State rested, and the defense moved for a directed verdict, arguing a "lack of evidence with the requisite intent of Mr. Vu to commit" burglary. The court denied the motion, and the defense rested without calling any witnesses.

¶18. Closing arguments commenced. During the defense's closing argument, defense counsel stated that Mapp and Vu "were kind of dancing around the room, but it was just Tommy being Tommy. She knows he's like that. So, this wasn't a thing – this was an unfortunate, uncommon behavior I guess you would say. It's uncommon behavior, but it was Tommy being Tommy." Seizing upon defense counsel's statement of "Tommy being Tommy," Assistant District Attorney Bill Barrett then provided the following statements in the State's rebuttal closing argument:

> Tommy being Tommy. Do you know what that is? Domestic violence. That's a long-term relationship and a long-term position **where he was domestic violencing (sic) both his children's mother.**

(Emphasis added). Without objection from the defense, the State continued:

> This is as much a domestic-violence case as it is a burglary case. This is Tommy doing Tommy things. **Tommy has been doing Tommy things for a long time**. Tommy has been **trespassing on her property for a long time. He's been not following the Orders of the Courts for a long time. He's been not following the laws in the State of Mississippi in Jackson County for a long time.** If he doesn't follow the Orders of the Courts, I don't know why you should believe that he was trying to go over there and do anything right on the 10th of July of 2022.

(Emphasis added). Again, there was no objection from the defense, and the State continued in its closing:

> Tommy took her phone. Why did he do that? Do you think it was so she

couldn't call the police, because he knows what happens when she calls the police; right? **What happened the last time? He got trespass on property.** What happened this time? **Cops show up and found him there. It's pretty obvious** that he was trying to leave her defenseless**, and for the umpteen[th] time, a victim of domestic violence.**

(Emphasis added).

¶19. Here, for the first time, the defense objected, stating, "There's no evidence in the record of any prior domestic violence that I'm aware of, Your Honor."  The trial court sustained the objection, and the State finished its closing arguments:

> Domestic violence, let's talk about it. The circle of domestic violence. The defendant won't stop calling her from jail. That's a fact . . . . What does your common sense tell you about that fact? It tells you he's trying to continue the cycle of domestic violence. I think that it is pretty clear how we got here, i[t']s Tommy doing Tommy things, and Tommy doing Tommy things for a long time.

Again, the defense made no objection, and the State concluded its closing arguments.

¶20. When the jury exited to deliberate, defense counsel addressed the court, stating:

> Judge, I don't know the law on it this second, but we've been trying to protect our client as having prior convictions and stuff this whole time. . . .The State was running real fast and loose with that. And I'm really concerned as to what that, just did to those jurors. I mean, letting him get away with dancing for the umpteenth time he did that, because maybe he was referencing the violations of the Chancery Court Order, but specifically saying his prior convictions of trespass -- because I don't think that ever came in -- but his prior convictions saying his prior domestics[.]

The court responded, stating that "there was no contemporaneous objection at the time he said it."  The defense clarified to the trial court that "[t]here was an objection at the time[.]"  The court decided to "let it go to the jury and see what the jury does, and if [the defense] want[s] to file some type of motion, [it] can."

10

¶21. The jury found Vu guilty of burglary of an inhabited dwelling. The defense moved for a judgment notwithstanding the verdict (JNOV) or a new trial based upon the State's "closing arguments, and the references to Mr. Vu's prior criminal history, which was prohibited and . . . agreed upon prior to trial." The court denied the post-trial motion, and Vu appealed, arguing the trial court erred by denying Vu's motions for directed verdict and JNOV because the evidence was insufficient to support the conviction for burglary; the trial court erred by allowing evidence of Vu's prior bad acts to be presented to the jury despite ruling to exclude them; and Vu received ineffective assistance of counsel.

## ANALYSIS

### I. Sufficiency of the Evidence

¶22. Vu's first argument to this Court alleged that the trial court erred by denying his post-trial motion because the evidence was insufficient to support the conviction for burglary. In support of his argument, Vu contends that the State did not meet its burden of proof to show that Vu broke into Mapp's house with the intent to commit an assault once inside.

¶23. "This Court reviews challenges to the sufficiency of the evidence de novo." *Ratcliff v. State*, 396 So. 3d 1101, 1104 (¶4) (Miss. 2024) (citing *Sanford v. State*, 247 So. 3d 1242, 1244 (Miss. 2018)). "When considering the legal sufficiency of the evidence, this Court views the evidence in the light most favorable to the State to determine if any rational juror could have found the essential elements of the crime beyond a reasonable doubt." *Benthall v. State*, 311 So. 3d 697, 703 (¶20) (Miss. Ct. App. 2021) (citing *Martin v. State*, 214 So. 3d 217, 222 (¶15) (Miss. 2017)). "Credible evidence consistent with guilt must be accepted as

11

true." *Id.* (citing *McClain v. State*, 625 So. 2d 774, 778 (Miss. 1993)).

¶24.  "Burglary of a dwelling has two elements: (1) unlawful breaking and entering, and (2) intent to commit a crime therein." *Alston v. State*, 287 So. 3d 182, 185 (¶12) (Miss. 2019) (quoting *Jackson v. State*, 90 So. 3d 597, 604 (¶27) (Miss. 2012)); *see also* Miss. Code Ann. § 97-17-33 (Rev. 2020).[5]  The Mississippi Supreme Court has explained proof of the intent element by stating:

> The State seldom has direct and positive testimony expressly showing the specific intent of an intruder at the time he unlawfully breaks into a dwelling house; however, such testimony is not essential to establish the intent to commit a crime. Intent is an emotional operation of the mind, and is usually shown by acts and declarations of the defendant coupled with facts and circumstances surrounding him at the time.

*Newburn v. State*, 205 So. 2d 260, 265 (Miss. 1967).  Furthermore, a person is guilty of simple assault when he "attempts by physical menace to put another in fear of imminent serious bodily harm."  Miss. Code Ann. § 97-3-7(1)(a)(iii) (Rev. 2020).  "Assault can be committed without any physical touching." *Griffith v. City of Bay St. Louis*, 797 So. 2d 1037, 1042 (¶21) (Miss. Ct. App. 2001).

¶25.  Vu argues that he "never hit [Mapp] or was violent towards her" and he "had ample opportunity to commit an assault inside Mapp's home, if that were his intent."  Although there was no testimony expressly showing Vu's specific intent when he unlawfully kicked

---

[5] Section 97-17-33 states:

> Every person who shall be convicted of breaking and entering, in the day or night . . . with intent to steal therein, or to commit any felony, or who shall be convicted of breaking and entering in the day or night time, any building within the curtilage of a dwelling house . . . shall be convicted of burglary[.]

down Mapp's door and entered into Mapp's home, there were facts and circumstances that indicated that his intent was to put Mapp in "fear of imminent serious bodily harm." Miss. Code Ann. § 97-3-7(1)(a)(iii).

¶26. The undisputed testimony from trial demonstrated that Vu kicked the door open to Mapp's home, yelled at her, pointed in her face, and took her phone. Mapp testified that she was "scared" and that she was "intimidated." Tran testified he was "afraid" and that all the children were "crying" and hovering in the back bedroom. Additionally, the evidence proved that Vu's entrance into the home was forceful and shocking. Any rational juror could have found Vu's actions put the occupants of the home in "fear of imminent serious bodily harm." *Id.*

¶27. Further, Vu's simple assault conviction for his actions inside the home on the day in question was entered into evidence without a specific objection. The defense attorneys offered a general objection to prior convictions, but when the State explained the misdemeanor convictions it intended to use at trial stemmed from the actions of Vu on the day in question, defense counsel specified no objections to that evidence. The misdemeanor conviction of simple assault further supports the jury's finding. This Court finds that a rational juror could have found the essential elements of the crime charged beyond a reasonable doubt. This issue is without merit.

## II. Prior Bad Acts

¶28. Vu argues that the trial court erred in allowing evidence of Vu's prior bad acts to be presented to the jury despite its ruling on the motion in limine. Specifically, Vu takes issue

13

with evidence that he had struggled with substance abuse and had a history of domestic abuse. Vu centers his argument on the admission of the chancery court order and the State's closing arguments.

¶29. "This Court applies an abuse-of-discretion standard when reviewing a trial judge's decision regarding the admission or exclusion of evidence." *Stone v. State*, 94 So. 3d 1078, 1081 (¶9) (Miss. 2012) (citing *Hargett v. State*, 62 So. 3d 950, 952 (Miss. 2011)). Mississippi Rule of Evidence 404(b)(1) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." However, the "evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." MRE 404(b)(2). The evidence still may be excluded under Rule 403 if the risk of undue prejudice substantially outweighs its probative value. MRE 403.

¶30. As stated earlier, a motion in limine to exclude "any and all prior, bad acts and/or reputation in the community for same, felony or misdemeanor convictions, arrests, or allegations levied against the Defendant" was filed by the defense. This Court cannot determine what defense counsel intended to exclude, as the motion makes no mention of specific documents or instances. The State introduced the chancery court order during direct examination of Mapp, without any objection from defense counsel.[6] "Counsel must object

_____

[6] On appeal, the State avers that the evidence was introduced to tell a complete story and show Vu's intent. The State contends that it did not delve into the unfavorable details of the chancery court order but, rather, merely relied on the order to prove that Vu was not welcome in the home where his children resided. We do not reach a discussion on these

14

contemporaneously to inadmissible evidence in order to preserve the error for appeal." *Ronk v. State*, 172 So. 3d 1112, 1134 (¶51) (Miss. 2015) (quoting *Boyd v. State*, 977 So. 2d 329, 337 (Miss. 2008)). Defense counsel's failure to object to the chancery court order "waives any claim of error on appeal" that would be related to the chancery court order. *Gillett v. State*, 56 So. 3d 469, 520 (¶150) (Miss. 2010) (citing *Howell v. State*, 860 So. 2d 704, 756 (Miss. 2003)).

¶31. Vu further argues that the State's closing arguments were highly prejudicial. Vu takes issue with the above-quoted portions of the State's closing argument, which Vu contends insinuate that Vu's actions on July 10, 2022, "were in conformity with his character and his history of domestic abuse." He argues that the State's comment on the "circle of domestic violence" was not based on trial evidence.

¶32. We again note that the defense failed to contemporaneously object to the State's comment on a "circle of domestic violence." "If no contemporaneous objection is made, the error, if any, is waived." *Howell v. State*, 860 So. 2d 704, 756 (¶185) (Miss. 2003) (quoting *Walker v. State*, 671 So. 2d 581, 597 (Miss. 1995)). The record before this Court evidences that the only comment where the defense raised an objection was when counsel for the State said, "It's pretty obvious that he was trying to leave her defenseless, and for the umpteen[th] time, a victim of domestic violence." The objection was that "[t]here's no evidence in the record of any prior domestic violence[.]" This objection was sustained, so the error was

---

arguments in this appeal.

15

cured.[7] *Turner v. State*, 319 So. 3d 1066, 1080 (¶43) (Miss. 2021). Vu did not move for a mistrial or ask for anything further from the trial court. Vu does not argue to this Court that any further action was required to cure the error.

¶33. Vu's failure to object to the bulk of the closing statements waives the argument on appeal, and the trial court's sustaining the defense's objection cured any other errors.[8] This Court will not reverse the trial court on the admission of the chancery court order when it was admitted without objection from the defense. We make no direct ruling on whether the order and statements that were admitted without objection were actually inadmissible because the arguments are procedurally barred. Vu's arguments are, however, preserved for the ineffective assistance of counsel claims.

### III. Ineffective Assistance of Counsel

¶34. Vu argues that he received ineffective assistance of counsel for two reasons—defense counsel's failure to object to the State's admission of the chancery court order, and defense counsel's failure to request a mistrial after the State's allegedly improper closing arguments.

¶35. This Court typically will not review an ineffective assistance of counsel claim on direct appeal unless "(1) the record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial judge." *Harris*

---

[7] After sustaining the objection, defense counsel did not ask for any further action by the trial court.

[8] The State raises the arguments for waiver in its brief. Vu did not file a reply brief to address this argument and does not raise any basis for this Court to overlook this procedural bar. *See McVay v. State*, 385 So. 3d 1280, 1294-95 (¶36) (Miss. 2024).

*v. State*, 378 So. 3d 971, 980 (¶35) (Miss. Ct. App. 2024) (quoting *Sanders v. State*, 228 So. 3d 888, 892 (¶17) (Miss. Ct. App. 2017)). "We may also address such claims on direct appeal when the record affirmatively shows that the claims are without merit." *Id.* (quoting *Gregg v. State*, 372 So. 3d 132, 137 (¶13) (Miss. Ct. App. 2023)). In *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the Supreme Court established a two-prong test that must be proved for an ineffective-assistance-of-counsel claim to be successful:

> First, the defendant must show that counsel's performance was deficient. This requires showing counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

¶36. "As to the first prong, this Court has held that 'the accused is not entitled to errorless counsel, and not counsel judged ineffective by hindsight. Each case is to be decided on the totality of the facts of the entire record.'" *Sandlin v. State*, 312 So. 3d 1191, 1197 (¶14) (Miss. Ct. App. 2020) (quoting *Stringer v. State*, 454 So. 2d 468, 477 (Miss. 1984)). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Wilcher v. State*, 863 So. 2d 776, 796 (¶30) (Miss. 2003) (citing *Stringer*, 454 So. 2d at 477). This Court has held that "[c]ounsel's choice of whether or not to file certain motions, call certain witnesses, ask certain questions, or make certain objections falls within the ambit of trial strategy." *Hill v. State*, 850 So. 2d 223, 226 (¶14) (Miss. Ct. App. 2003) (citing *Scott v.*

*State*, 742 So. 2d 1190, 1196 (¶14) (Miss. Ct. App. 1999)).

¶37. On appeal, the State "does not stipulate that the record is adequate for this Court to review Vu's ineffective-assistance claim." Accordingly, this Court must find that the record affirmatively shows "ineffectiveness of constitutional dimensions" or meritless claims to review the issue. Vu's claims of ineffectiveness are based on defense counsel's failure to exclude evidence of his prior bad acts. This is an alleged error under the Mississippi Rules of Evidence, and we cannot affirmatively say that Vu's trial contained error of constitutional dimension. Accordingly, we will not review the merits of Vu's ineffective assistance of counsel claim in this direct appeal. Vu's right to raise this issue in a motion for post-conviction collateral relief is preserved.

## CONCLUSION

¶38. This Court finds that the evidence was sufficient to support Vu's conviction of burglary, and this Court affirms the trial court's denial of Vu's post-trial motion. Further, Vu's argument on appeal that the trial court erred in admitting evidence of his prior bad acts is waived on appeal for the failure to contemporaneously object. Vu's ineffective assistance of counsel claim is dismissed without prejudice to his right to raise the issue in a motion for post-conviction collateral relief. Vu's conviction and sentence are affirmed.

¶39. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., McDONALD, McCARTY, EMFINGER, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR. WESTBROOKS, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**